**HIRAM A. FARRAND, Inc., et al. v. McCRORY STORES CORPORATION et al.**

No. 6602.

District Court, E. D. New York.
Oct. 27, 1933.

Howson & Howson, of New York City (Kennard N. Ware, of Philadelphia, Pa., of counsel), for plaintiffs.

Rosenberg, Goldmark & Colin, of New York City (Louis Fabricant, of New York City, of counsel), for trustee.

CAMPBELL, District Judge.

This suit is brought by the plaintiff for relief by way of injunction against the trustees as well as against the original defendants, from the alleged infringement of the following patents, issued by the United States Patent Office:

No. 1,402,589, issued to Hiram A. Farrand, for rule, granted January 3, 1922, on an application filed October 23, 1919;

No. 1,799,044, issued to Hiram A. Farrand, assignor to Hiram A. Farrand, Inc., for means for controlling resilient rules, granted March 31, 1931, on an application filed July 5, 1929;

No. 1,799,094, issued to Hiram A. Farrand, assignor to Hiram A. Farrand, Inc., for means for controlling resilient rules, granted March 31, 1931, on an application filed October 5, 1928;

No. 1,828,401, issued to Hiram A. Farrand, assignor to Hiram A. Farrand, Inc., for resilient rule, granted October 20, 1931, on an application filed October 21, 1926

—and for an order requiring the surrender or destruction of all the alleged infringing devices, together with taxable costs.

The suit was originally brought against McCrory Stores Corporation and J. G. McCrory Company, both of the said defendants being charged with infringement of the said four patents.

In January, 1933, both of the said original defendants went into voluntary bankruptcy, and subsequent thereto the defendant Irving Trust Company was elected or appointed trustee in bankruptcy for each of said original defendants.

On August 5, 1933, leave of the court having been first obtained, a supplemental bill was filed joining the trustees for the respective original parties defendant.

The title to the several patents in suit is in the plaintiff Hiram A. Farrand, Inc., and the plaintiff Stanley Works is the exclusive licensee.

The defendant McCrory Stores Corporation is a holding corporation, owning the entire capital stock of the J. G. McCrory Company, and directing and controlling its operations.

The defendant J. G. McCrory Company is engaged in operating a chain of stores, including one located at 502 Fulton street, Brooklyn, N. Y., from which the devices charged to infringe, and offered in evidence herein as Exhibits 5 and 7, were purchased; the first of these rules, Exhibit 5, having been purchased prior to the filing of the original bill, and the second of these rules, Exhibit 7, having been purchased from an employee of the trustee prior to the filing of the supplemental bill, and is included in the issues of this case. The said Exhibit 7 is known and described by the name "Mechanics' Pal."

The defendants did not introduce in evidence any prior art, either patented or otherwise, nor was any testimony offered which affected the validity of any of the patents in suit. The validity of the patents in suit was not attacked, and the prima facie presumption of validity must prevail.

This suit is based upon all of the eighteen claims of patent No. 1,402,589, claim 21 of patent No. 1,799,044, claims 1 and 2 of patent No. 1,799,094, and claims 10 to 20, inclusive, of patent No. 1,828,401.

Patent No. 1,402,589 covers broadly a concavo-convex measuring strip of resilient metal, a holder comprising a rotatably mounted cup into which the strip may be interiorally wound, i. e., the inner end of the strip is coiled against the vertical walls of the cup, and the succeeding coils are spiraled inwardly toward the center of the cup, until the inner end of the strip is reached, which is accessible for withdrawal by lateral displacement. There is also provided for the device disclosed in this patent a U-shaped bridge-like member, attached to the center stud around which the cup rotates, and extending over the side walls of the rotatable cup and into the cup, and which acts as a combined brake and guide for the control of the strip when it is introduced into or removed from the cup.

Claim 1 is typical of the broad claims, and claim 10 of the more detailed claims.

Claim 1 reads as follows: "1. The combination of a holder and a flexible rule coiled therein with its inner end free and accessible

for withdrawal; with means for guiding the inner end of the rule while it is being withdrawn from the holder."

The claim covers broadly the interior wind principle, and is not limited to the concavoconvex rule strips, and the bridge member 15, in Fig. 5 of the patent in suit, is "the means for guiding the inner end of the rule while it is being withdrawn from the holder." The function of the bridge member as a guide is shown in Fig. 6.

The claim reads on Exhibit 5, and the bridge member functioning as a guide is found in Plaintiffs' Exhibit 5.

Claim 10 reads as follows: "10. The combination of a supporting structure; a casing rotatably mounted thereon; and a flexible tape of concavo-convex section coiled in said casing with its inner end free to be moved laterally out of the plane of its coil to permit of its withdrawal, said structure including a portion placed to engage and normally hold said inner end of the tape from movement when it is projected laterally from said plane."

This claim reads upon Exhibit 5, the supporting structure being the pivot stud, the casing rotatably mounted thereupon being the rotatably mounted cup, and the inner end of the tape is normally engaged and held by the bridge member, if the end of the tape in Exhibit 5 is projected laterally from the plane of the coil.

The remainder of the eighteen claims of the said patent No. 1,402,589 may similarly be read on Exhibit 5.

Patent No. 1,799,044, shows a simplification of structure and a consequent cheapening of manufacture, the pressure of the brake member upon the rotatable cup being obtained by utilizing a strip of metal which is inherently resilient.

This is found also in Exhibit 5.

Claim 21 reads as follows: "21. The combination, with a resilient rule having an inherent tendency to assume a rectilinear state, of a holder having a circular wall against which the rule is adapted to be wound in the form of a coil, and an element adapted to move radially of the holder into contact with one of said elements to prevent rotation of the holder and the coil carrier thereby."

This claim calls for the radial movement of the braking means to release the braking pressure against the edge of the cup.

The movement of the bridge member of Exhibit 5 is likewise substantially radial if pressure be applied to it.

Patent No. 1,799,094, which was copending with patent No. 1,799,044 and issued on the same day, is the broader in scope, and is an improvement and refinement upon the device shown in patent No. 1,402,589, in that the combined guide and brake member is made movable, thereby facilitating the control of the rule strip as it is being introduced into and removed from the holder.

As shown in Fig. 5, the arms of the bridge member are normally forced, by means of the leaf springs 32, into functional engagement with the rim of the rotatable cup. To allow the rule spring to freely eject itself to the degree desired, the arms of the bridge member may be elevated out of contact with the rim of the cup, by simply pressing them inwardly.

The egress of the rule strip may be checked by relaxing the inward pressure, whereupon the bridge member will automatically re-engage the rotating cup and check the movement of the rule. To feed the rule back into the cup, the pressure upon the holder is removed by the inward pressure upon the ends of the bridge member, and its consequent elevation.

Claim 1, which is typical, reads as follows: "1. In combination with a concavoconvex rule having an inherent tendency to assume a rectilinear state when coiled or in other than a rectilinear state, a coil holder having a circular wall, and a guide positioned adjacent said circular wall, said guide being movable with respect to the coil and the holder in a plane disposed at an angle to the plane of rotation of the coil, said guide co-operating with said circular wall to effect reduction of said rule into an internally wound coil within said holder, when said rule is moved longitudinally toward said holder, said coil having a plurality of convolutions laid one within the other with the outermost convolution lying against the inner face of said circular wall of the holder."

This claim is distinguished from the structure shown in patent No. 1,402,589 in the following language: "Said guide being movable with respect to the coil and the holder in a plane disposed at an angle to the plane of rotation of the coil."

This claim clearly reads upon the combined guide and brake member of Exhibit 5, and the only practical difference between the device disclosed in the drawings of the patent

in suit and Exhibit 5 is that in Exhibit 5 the brake is composed of a single strip of resilient material, so formed as to normally press against the edges of the cup, whereas in the patent in suit, this removable pressure is obtained by means of a number of leaf springs fastened to the arms of the brake member.

No such difference is incorporated in the claim, and its language is equally descriptive of both structures.

Not only claim 1, but many other claims of this patent, read upon Exhibit 5.

Patent No. 1,828,401, in so far as the claims upon which this suit is based, covers a wafer-thin rule strip, normally concavo-convex in cross-section, but adapted when coiled to assume a transversely flat cross-section, and having an inherent tendency to assume and maintain a rectilinear form; said rule strip being substantially of uniform thickness, and having "an infinitesimally thin layer of metal superimposed upon the strip and integrally united thereto," and having markings formed by omissions in the metallic sheathing so that the numerals and graduations are formed by the color contrast between the core and the surrounding sheathing.

The claims in suit are for the structure and not for the process of forming the structure.

Claim 15 is a typical claim, and reads as follows: "15. A coilable resilient measuring device composed of a wafer-thin steel strip of substantially uniform thickness throughout, said strip normally being of a concavo-convex cross-sectional form which produces in said strip an inherent tendency to assume a longitudinally rectilinear state at all times, said strip being adapted when coiled to assume a transversely non-curved form, the change from the concavo-convex cross-sectional form to the transversely non-curved form being confined to an area immediately adjacent the point of tangency of the longitudinally rectilinear portion of the strip to the coiled portion thereof throughout the coiling operation, thereby effecting in said strip a localized simultaneous multilateral flexure progressing longitudinally of the strip as the strip is being coiled, and an infinitesimally thin layer of metal superimposed upon the strip and integrally united thereto to withstand said localized flexure, there being markings formed by omissions of said superimposed metal layer and which extend from the outer face of said superimposed metal to the underlying face of the strip."

The patentee in his specification says: "My present invention relates to means for increasing the strength and resiliency of the spring of which the rule is composed; for preventing corrosion thereof; for producing color contrast thereon; for illuminating the surface of the rule; and for creating on the rule a reflecting and light diffusing surface, the said means in its preferred form constituting a metallic plating applied to the spring or rule by the electro-plating process. The metallic plating may be of nickel or chromium, either of which presents a hard wear-resisting surface capable of being polished to a highly reflective state."

It seems to me that the gist of claim 15 is the use of an infinitesimally thin layer of metal superimposed upon a concavo-convex rule strip and integrally united thereto, and interruptions in this layer to form markings by reason of the contrast in the color of the base metal with the surrounding areas of sheathing.

Mr. Farrand pointed out the advantages of this form of strip, both in his specifications and testimony.

From the testimony of Mr. Farrand and the plaintiffs' expert, Mr. Crum, I am convinced that in both Exhibits 5 and 7, the structure of the rule strips was identical, and that it consisted of a core or base of iron or steel, and a nickel sheathing superimposed thereon, and interrupted at the numerals and graduations so as to permit the color of the base metal to show; the markings being formed by the color contrast between the iron or steel base and the surrounding areas of metal sheathing.

As I have before stated, the claims 10 to 20, inclusive, do not involve a process, but merely the structure of the rule strip.

Defendant assumes that the presence or absence of etching on Exhibit 7 is a material factor in determining whether it infringes or not, but that assumption is unwarranted.

The omission of etching forms no part of the invention, nor is there any requirement therefor in claims 10 to 20, inclusive.

Even if Exhibit 7 was made in accordance with defendant's theory, the possibility of which I doubt, the resulting strip would be an infringement.

The claim calls for "an infinitesimally thin layer of metal superimposed upon the strip and integrally united thereto to withstand said localized flexure, there being markings formed by omissions of said superimposed

metal layer, and which extend from the outer face of said superimposed metal to the underlying face of the strip."

This claim reads precisely on Exhibits 5 and 7.

What defendant's counsel suggests, the initial etching of the core, if it was possible, might form a patentable improvement but does not relieve from infringement, as in each of Exhibits 5 and 7, the conception of patent No. 1,828,401 in suit has been utilized.

It is likewise true that if the core had been weakened by the initial etching of the core, if it was possible, and thereby the spring was rendered less efficient, that would not relieve from infringement.

In both Exhibits 5 and 7 we find a smooth surface and legible markings formed by a contrast between the partially exposed core and the surrounding sheath of integrally connected metal.

The trustee-defendants here are not in the position alone of infringers, but also as the representative of the original defendants, and notice of infringement to the original defendants was sufficient, and notice was not required to be given with regard to each subsequent device which might infringe, and with which defendants might thereafter deal.

The inventions of the patents in suit were meritorious, and on the basis of said patents a substantial and successful business was built up, and plaintiffs are entitled to protection.

The several patents in suit are valid as to the claims in issue: Patent No. 1,402,589, claims 1 to 18, inclusive; patent No. 1,799,-044, claim 21; patent No. 1,799,094, claims 1 and 2; patent No. 1,828,401, claims 10 to 20, inclusive.

Exhibit 5 is an infringement of the claims in issue of each of the several patents in suit.

Exhibit 7 (Mechanics' Pal) is an infringement of claims 10 to 20, inclusive, of patent No. 1,828,401.

The plaintiffs are entitled to a decree against the defendants granting an injunction against the further sale of infringing rules, and specifically against the further sale of rules like Exhibits 5 and 7 (Mechanics' Pal), and an order requiring defendants to deliver up for destruction all infringing rules now in the possession of the defendants, or any of them, with the costs of this suit.

A decree may be entered in accordance herewith.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion for the assistance of the court, as provided by the Rules in Equity (28 USCA § 723) and the Equity Rules of this court.